No. 39,365

JOAN WADDLE, a minor by JOE S. WADDLE, her father and next friend, *Appellee*, v. FRED BRODBECK and LEWIS SCHRADER, Partners, doing business under the firm name and style of BRODBECK-SCHRADER SHOWS, *Appellants*.

(272 P. 2d 1066)

Opinion filed July 6, 1954.

*Wendell S. Holmes*, of Hutchinson, argued the cause, and *F. B. Hettinger*, of Hutchinson, and *John A. Etling*, of Kinsley, were with him on the briefs for the appellants.

*S. R. Blackburn*, of Great Bend, argued the cause, and *Harry G. Wiles*, of St. John, and *Tudor W. Hampton*, and *Jerry M. Ward*, both of Great Bend, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This was an action for damages for personal injuries predicated on the doctrine of *res ipsa loquitur*. From a verdict and judgment in favor of the plaintiff, defendants appeal. There is no

controversy over the extent of plaintiff's injuries nor the amount of the verdict—if plaintiff is entitled to recover. Inasmuch as the only argument presented here involves the answers to special questions returned by the jury, only facts which are pertinent to the issues involved will be narrated and discussed.

Appellee Joan Waddle will be hereinafter referred to as plaintiff, and appellants Fred Brodbeck and Lewis Schrader as defendants.

For many years the defendants were engaged in operating amusement rides under the name of Brodbeck-Schrader Shows, and on the date the plaintiff sustained her injuries were playing the Kansas State Fair at Hutchinson. About 5:45 in the afternoon of September 19, 1951, plaintiff purchased a ticket for a ride known as the Sea Cruise. The ride may be described as follows: Four tub-shaped cars and four boat-shaped cars travel on two concentric tracks, about three and one-half feet apart and at varying heights from the ground. The tracks consist of sectional steel plates, set up perpendicularly to the ground, with steel pipes welded on top to form the rails on which the cars travel. The two tracks are securely and rigidly held in place by steel keys and angle iron braces, and rest on steel sills to which they are keyed. The power unit is located in the center of the circle formed by the tracks and is connected to the cars by long arms or sweeps which propel the cars in a counter-clockwise direction when the ride is in operation. Each riding unit is mounted on a triangular-shaped heavy steel dolly, which has a wheel assembly at each point of the triangle, one traveling on the outer track, and the other two in tandem on the inner track. The outer wheel assembly consists of an aluminum alloy wheel housing and a rubber-tired wheel which travels along, and supports the car on the outside rail. Each of the two inner wheel assemblies, both front and rear, are identical in design, consisting of an aluminum alloy housing in which are mounted four rubber-tired wheels. Two of these wheels are in tandem, perpendicular to the ground, and travel along the top of the inner track, supporting the car thereon. The other two wheels are mounted horizontally in the center of the housing, one traveling along the outside of the inner rail, the other along the inside of the inner rail, their purpose being to prevent outward or inward motion of the wheel assembly, and thus of the car itself, while the ride is in motion. Each wheel whether mounted horizontally or perpendicularly, has two sealed, greaseless, lifetime New Departure ball bearings, one

pressed into each side of the wheel hub, permitting the wheel to revolve freely around its shaft.

A fence encloses the area occupied by the Sea Cruise ride, immediately outside of which is a ticket booth. Slightly to the side of the booth, but inside the fence, is a lever by means of which the operator, who has an unobstructed view of the entire ride, manually controls the clutch and brake for starting and stopping the ride.

Plaintiff and her escort seated themselves in one of the tubs and the ride started. After making a few revolutions the tub tipped over, throwing plaintiff between the tracks and seriously injuring her. Defendant Brodbeck, who was operating the ride, applied the brake and brought the ride to a stop within a distance of eighty feet.

The respective parties presented their testimony and the court, under instructions which are not questioned here, submitted the case to the jury which returned into court a general verdict in favor of the plaintiff, and their answers to special questions submitted by the court, which are as follows:

"1. Was the accident the result of mechanical failure? Answer, Yes.

"2. If your answer to question No. 1 is in the affirmative, then state the nature of the mechanical failure. Answer, Sealed ball bearing disintegrated.

"3. . . .

"4. Could the defendants, their agents, servants or employees have discovered such defect or failure by the exercise of ordinary and reasonable care? Answer, Yes.

"5. If your answer to question No. 1 is in the affirmative, did any acts or omissions of the defendants contribute to such mechanical failure? Answer, Yes.

"6. If you answer question No. 5 in the affirmative, then state what acts or omissions of the defendants contributed to such failure. Answer, The bearing failure should have been detected by sound and closer inspection, lacking thorough inspection.

"7. Did the defendants, their agents, servants and employees use ordinary and reasonable care in the inspection, maintenance and operation of this Sea Cruise Ride? Answer, No."

Defendants filed their motion to set aside the jury's answers to special questions Nos. 4, 5, 6 and 7 for the reason that the answers were contrary to and unsupported by the evidence, and moved for judgment in their favor upon the jury's answers to special questions Nos. 1 and 2, notwithstanding the general verdict. These motions were overruled by the trial court and judgment was entered in favor of the plaintiff. From these orders and judgment, defendants appeal.

By the answers to the special questions Nos. 1 and 2, the jury found that the accident was due to a mechanical failure, i. e., the disintegration of a sealed ball bearing. These findings were not questioned by defendants.

The question presented here for review is whether the jury's answers to special questions 4, 5, 6 and 7 are sustained by the evidence.

Defendants do not claim plaintiff's petition failed to state a cause of action according to the doctrine of *res ipsa loquitur*, nor do they contend that plaintiff's evidence was insufficient under the doctrine to make a *prima facie* case so as to justify submitting it to the jury, and in all fairness they state that absent defendants' evidence upon which the jury made special findings of fact as to the cause of the accident, the testimony presented on behalf of the plaintiff might have permitted an inference of negligence to have been properly drawn.

The direct evidence disclosed that the Sea Cruise ride equipment was purchased in 1948 and had been in use over three years and in operation over 1,700 hours; that from time to time during the three years, additional safety devices were added; that the ride equipment was disassembled and reassembled when moving from town to town; that trial runs were had and inspections were made to determine its safety from day to day. This was determined by sight and hearing. The units themselves were not disassembled but were merely lifted from the track when moved from town to town. There was testimony by one of the defendants that the ride had been involved in an accident in Garden City the preceding June. Three witnesses testified, in substance, that at 3:30 in the afternoon of the day of the accident they were riding in one of the tubs of the Sea Cruise ride and that the defendants' operator stopped the ride and took a crescent wrench and worked about five minutes on the front wheel on the inside of the tub they were occupying, and it appeared that the nut on the front wheel was not completely tight but was rather loose when he left. There was testimony that a witness was standing about ten feet from the ride when he heard a rumble and a thud and when he turned around the accident occurred. A witness standing thirty or forty feet away from the ride heard a noise and turned around and saw the tub bouncing along the track. One of the defendants testified to the effect that when the carnival was on the road they do not have

time to do repairing; that they maintain their winter quarters for the purpose of repairing and redecorating the rides so they can go out and tear them up again; that it was their policy if they saw something through the summertime that was weak and needed replacing, or if they could improve a ride from a safety standpoint, it was done in the wintertime. The defendants attempted to show by a mechanical engineer that the accident was occasioned by a defective ball bearing in one of the wheels of the Sea Cruise ride, and that defendants could not have detected it prior to the accident. However, the defendants failed to sustain this theory. Nowhere did the mechanical engineer definitely testify that any defect in the sealed bearing could not have been discovered by reasonable inspection. He stated that he made an examination of a portion of the wheel assembly approximately one year after the accident occurred, and that he requested of defendants all the parts of the wheel assembly, but they were not produced, and it is possible that some of the missing parts might have been a factor in determining the cause of the failure of the wheel to operate properly. In substance, he testified that the cause of the accident was the disintegration of a sealed ball bearing. The weight to be given defendant's evidence, and the credibility of their witnesses were matters for the jury to determine.

In view of this and other evidence in the case, both direct and circumstantial, granting to the plaintiff the benefit of all inferences and presumptions to which she is entitled, we believe the jury's answers to the special questions were amply supported by the evidence.

It is not necessary to write at length regarding the doctrine of *res ipsa loquitur* in order to determine the issues involved in this action, as this subject was fully covered in the case of *Mayes v. Kansas City Power & Light Co.*, 121 Kan. 648, 650, 249 Pac. 599, where we said:

"Literally translated the phrase means 'the thing itself speaks,' or 'the thing speaks for itself.' It is a term used in a limited class of negligence cases, referring to the method of proof of general negligence (as distinct from proof of specific negligent acts or omissions), by proving the injury, together with the accompanying circumstances, from which it may be inferred, and is reasonable to infer, that the casualty happened only because of some negligence of defendant. In actions for damages because of defendant's negligence, the general rule is, of course, that the negligence of defendant is never presumed, but must be established by proof. The cases in which *res ipsa loquitur* is applicable are not exceptions to the general rule. 'It does not dispense with

proof of negligence in personal-injury cases.' (*Root v. Packing Co.*, 88 Kan. 413, 424, 129 Pac. 147.) Rather, in cases in which the phrase is applicable, proof of negligence is made, if at all, by circumstantial evidence; that is, the proof of the casualty and of the surrounding circumstances are such as to leave no reasonable conclusion to be drawn therefrom other than that the casualty happened because of the negligence of defendant."

And again in *Stroud v. Sinclair Refining Co.*, 144 Kan. 74, 76, 58 P. 2d 77, we said:

"Where the thing which caused the injury complained of is shown to be under the management of defendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have its management or control use proper care, it affords reasonable evidence, in the absence of explanation by defendant, that the accident arose from want of care."

In *Waterbury v. Riss & Company*, 169 Kan. 271, 288, 219 P. 2d 673, we said the doctrine of *res ipsa loquitur* is not one of substantive law, but is one pertaining to evidence. Where it is relied upon alone, it simply means that certain facts and circumstances raise an inference or presumption of liability.

Plaintiff having admittedly made out a *prima facie* case under the rule, the defendants to relieve themselves from liability, were under the duty of producing evidence to the effect that the injury was not due to their negligence by showing due care on their part, or by evidence showing that it was occasioned by the acts of some third person, or by *vis major*. The rule was well stated in *Mayes v. Kansas City Power & Light Co.*, supra:

"In an action for damages because of negligence of defendant, when plaintiff has introduced evidence of defendant's negligence causing him injury, the defendant, to relieve itself from liability, is under the duty of producing evidence to offset or rebut that offered by plaintiff. This defendant may do by showing its own due care, even without showing the real cause of the accident, or by showing that the accident was caused by some third party, or by *vis major*. When evidence of this kind is offered by defendant, it is peculiarly the function of the jury to determine, from all the evidence, concerning the question, whether the defendant was in fact negligent, and if such negligence was the proximate cause of the injury." (syl. 3)

In *Emigh v. Andrews*, 164 Kan. 732, 734, 191 P. 2d 901, it was stated that the inference of negligence arising from the initial established fact compels the defendant, in order to relieve himself of liability, to move forward with his proof to rebut the inference of negligence.

Defendants offered evidence to rebut the inferences and presumption of negligence by showing that they made, just prior to the accident, inspection of the Sea Cruise ride, and that the defect causing

the injury could not have been discovered. However, it was clearly the function of the jury to weigh this evidence, together with all the evidence in the case, tending to show defendants' due care, or lack of it, and determine whether the defendants were negligent in the manner of their inspection and in the operation and maintenance of the Sea Cruise ride, and whether defendants' negligence was the proximate cause of plaintiff's injury.

In conclusion it may be stated that in view of the aforementioned rules of law, the defendants failed to move forward with evidence sufficient to satisfy the jury that they were without fault. The answers to special questions of the jury being sustained by sufficient evidence, it follows that the judgment must be affirmed.

It is so ordered.