No. 39,871

FANNIE HOPE GUTHRIE, *Appellee,* v. J. C. POWELL and RICHARD V. WOODDELL, *Appellants.*

(290 P. 2d 834)

Opinion filed December 10, 1955.

*J. A. Herlocker*, of Winfield, argued the cause, and *Harry O. Janicke* and

*Warren D. Andreas,* both of Winfield, were with him on the briefs for J. C. Powell, appellant.

*G. D. McSpadden,* of Winfield, argued the cause and was on the briefs for Richard V. Wooddell, appellant.

*Frank G. Theis,* of Arkansas City, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This is an action for damages for personal injuries. Each of the defendants demurred to the petition upon the ground that it did not state facts sufficient to constitute a cause of action. These demurrers were considered by the court and overruled. Defendants have appealed.

The real question in the case is whether the petition discloses such facts and circumstances as justify plaintiff in recovering under the doctrine of *res ipsa loquitur* and without alleging specific acts of negligence of the defendants, which resulted in her injuries. This requires an examination of the amended petition. The first paragraph of the amended petition names the parties and gives their residence. It continues:

"2. At all times mentioned herein defendants were partners in and the proprietors of a business known as the Winfield Sales Company located at the Cowley County Fair Grounds in or near the west edge of the city limits of Winfield, Kansas, and engaged in and operating what is generally known as a community sale business, buying and selling for their own account and the account of various patrons and customers diverse kinds of livestock and used and new merchandise, and holding forth said premises as a place of public resort to all interested persons.

"3. On April 15, 1953, plaintiff and her husband, S. R. Guthrie, came to and attended the premises of said Winfield Sales Company for the purpose of being customers and patrons at the sale held there on that day under the exclusive auspices, management and control of said defendants, and were legally on said premises as invitees of said defendants.

"4. The premises used and occupied by said defendants as a place of business consists of several frame buildings and livestock pens and runways, of which the principal building where most of said sales activities are conducted consists of a large room at the south end of said building in which patrons interested in buying and selling merchandise and inanimate personal property were congregated on said day, the business office of said defendants, a lunch stand, and a livestock pavilion located on the second story and reached by way of a ramp leading up from the first floor of said principal building. Said livestock sale pavilion is a recessed semi-circle of board seats surrounding a pit or sales arena approximately 30 feet long and 15 feet wide in which livestock is exhibited for sale at the ground level. Said arena is approximately 1 1/2 feet below the level of the lower tier of seats for spectators in the

pavilion and is enclosed by a wooden railing approximately three feet in height from said first step level.

"At about 1 p. m. of said day plaintiff was seated in a chair at the north end of the south main floor room engaged in visiting and conversing with women friends and acquaintances, most of whom were the wives of patrons attending said sale. Suddenly, there was a loud commotion and noise overhead and simultaneously bits of plaster and debris began to fall from the ceiling onto plaintiff and others standing or sitting near her which was followed instantaneously—as plaintiff later learned—by a six hundred pound steer falling through the ceiling immediately over and approximately twelve feet above her position, said beast falling and landing upon plaintiff as she sat in said chair, knocking her unconscious, flattening the chair and plaintiff to the floor and under said steer and causing painful, serious and permanent injuries to her as hereinafter set forth.

"5. Plaintiff alleges that at all times material herein, the premises occupied by said defendants, and particularly said main sale building as hereinbefore described were solely and exclusively under the management, control, care and possession of the defendants, their agents, servants and employees; all livestock in, on and about said premises and especially any such livestock being exhibited in said sales arena was solely and exclusively under the management, control, care and possession of said defendants, their agents, servants and employees; and specifically the steer which dropped on plaintiff through the ceiling was likewise under the sole and exclusive care, possession and control of said defendants, their agents, servants and employees. Plaintiff does not know, and therefore, does not attempt to allege or describe specific acts of negligence of which the defendants may have been guilty, and that may have been the proximate cause of the injuries to the plaintiff herein described; but, the plaintiff states and alleges that the fact that the steer fell through the ceiling onto the plaintiff causing the resulting injuries to plaintiff, was an occurrence which would not have taken place except for some act or acts of negligence of the defendants, their agents, servants or employees in the proper and safe operation, maintenance, conduct and handling of said sales premises and livestock being exhibited therein, and the fact that said steer was at large and fell through the ceiling onto plaintiff was the direct result and proximate cause of some act or acts of negligence on the part of the defendants while in the sole and exclusive management, possession, care and control of said sale premises and any property being exhibited thereat."

Continuing, the petition alleged that plaintiff was 66 years of age; that the result of the steer falling upon her caused certain physical injuries, which were detailed; that plaintiff was treated by a certain physician and showed the charges for the treatment; and, that as a direct result of the injuries plaintiff was damaged in the sum of $15,000, for which sum judgment was prayed.

In this court appellants summarize their argument under four points, as follows:

"1. The defendants had no knowledge of the animal's peculiarities or its propensities.

"2. The fact that a domestic animal escapes from custody is not so unusual as to warrant the application of the doctrine of res ipsa loquitur.

"3. Reasonable conclusions other than the negligence of the defendants can be drawn to explain the occurrence.

"4. The plaintiff had an equal opportunity to investigate and explain the occurrence and possesses the same amount of knowledge as the defendants."

We find no basis in the petition for arguing any of these points. Perhaps some of them could be raised either in defense or after a trial.

The definition of the term *res ipsa loquitur*, its purpose in a certain class of negligence cases and the force to be given it is fairly well outlined in *Mayes v. Kansas City Power & Light Co.*, 121 Kan. 648, 249 Pac. 599, where earlier Kansas cases and other authorities are cited, which case has been cited or quoted from with approval many times. The latest was in *Waddle v. Brodbeck*, 176 Kan. 583, 272 P. 2d 1066. Since both parties have cited the Mayes case we find no occasion here to quote from it or from the many cases in which it has been followed.

Plaintiff is entitled to a trial in this case. The trial court did not err in overruling the demurrers of the defendants. The judgment of the trial court is affirmed.