No. 41,968

G. M. WEHKAMP, *Appellant*, v. THE CITY OF GARDEN CITY, FINNEY COUNTY, KANSAS, a Municipal Corporation, *Appellee*.

(356 P. 2d 826)

Opinion filed November 12, 1960.

*John Staley Holden*, of Cimarron, argued the cause and was on the brief for the appellant.

*Lloyd H. Haag*, City Attorney, argued the cause, and *Dale E. Saffels* and *Clifford R. Hope, Jr.*, both of Garden City, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRICE, J.: The city of Garden City owned and operated a municipal airport at which was located a storage hangar. Plaintiff owned an airplane and rented storage space in the hangar. In the early morning hours of March 6, 1956, the hangar was completely destroyed by fire—as was the airplane which was stored therein at the time.

Plaintiff brought this action against the city to recover the value of his airplane. It was predicated upon the doctrine of *res ipsa loquitur*. At the close of his evidence the city moved for a directed verdict. The motion was sustained. Plaintiff's motion for a new trial was denied and judgment in favor of the city was entered on the verdict. Plaintiff has appealed.

It is apparent the motion for a directed verdict was treated as

a demurrer to the evidence. The sole question, as stated by both parties—is whether plaintiff's evidence established a cause of action for recovery under the doctrine of *res ipsa loquitur* sufficient to go to the jury.

The theory of plaintiff's case, as alleged in his petition, was:

.   .   .   .   .   .   .   .   .   .   .   .   .

"13. That the destroying and damaging of said airplane by fire and resulting damage to plaintiff was approximately caused by the negligent acts of the defendant, its agents, servants and employees in that said storage hangar was in the exclusive possession and control of defendant, and that defendant, its agents, servants, and employees, had the duty to plaintiff of operating said hangar in such a manner at all times to perform the function of storing said aeronca airplane in such a manner that ordinary instances no injurious occurrences such as herein set forth, were to be expected unless from the careless maintenance and operation of said hangar and premises and that all of the facts and circumstances pertaining to the condition of the hangar and premises surrounding the hangar and premises, including the maintenance and operation of the hangar and care for the grounds and premises were exclusively within the knowledge of the defendant, and that said aeronca aircraft would not have burned if due care would have been used by the defendant, but plaintiff alleges that the burning of said aircraft was proximately due to some negligent act or acts of the defendant, the exact nature of which are unknown to the plaintiff and the plaintiff is unable to determine such negligent act or acts and the same are inaccessible to the plaintiff; that the defendant, its agents, servants, and employees, and representatives know, or should know or have the means of ascertaining the direct cause of the fire and resulting damage to said airplane and the negligent act or acts are peculiarly within the knowledge of the defendant, its agents, servants, and employees, or representatives; that this plaintiff in no way contributed to the cause of said fire and the destruction of plaintiff's airplane."

The answer of the city alleged that the relationship between it and plaintiff was that of lessor-lessee; that no inflammable material was kept or stored in the hangar; that in the early morning hours of the date in question the hangar, together with plaintiff's airplane, was completely destroyed by fire of undetermined origin, but that neither the city nor its agents, servants and employees, were in any respect negligent in the maintenance and care of the hangar, and that plaintiff's damage was not caused or contributed to by any negligence on the part of the city or its employees. The answer further alleged that the plaintiff was well acquainted with the airport, its manner of maintenance, and the care and facilities available for the prevention and fighting of fires; that the risk of being damaged, as complained of by plaintiff, was a risk incident to the storing of the airplane in the hangar, and that notwithstanding the fact

plaintiff knew the conditions existing at the airport and the risks involved in storing his airplane in the hangar, he continued to store the airplane and thereby assumed the risk of being damaged.

At the beginning of the trial it was stipulated that the city had been served with the statutory notice of plaintiff's claim and that it had been denied, and that the value of the airplane was $1,250.

In view of the fact the sole question concerns the sufficiency of plaintiff's evidence to make out a case for submission to the jury under the doctrine of *res ipsa loquitur*, and because of the fact his evidence, as abstracted, is very brief—we quote all of it directly from the abstract:

"G. M. WEHKAMP.

"Stored plane, which is the subject of the law suit, in the Garden City Air Hangar east of Garden City, Kansas, first placed on live storage. February, 1956, changed method of storage to dead storage (T 15). Live storage was $15 a month. Dead storage was $10 a month. Live storage you could take the plane out and put it back any time you wanted to. In February, 1956, had airplane on dead storage. His understanding that if he took plane out and then put it back they would put it on live storage. 'It had to set there on dead storage (T 16).' Identified Exhibits B-1 and B-2, Bill for storage of his airplane. The month of February, 1956, his plane was on dead storage (T 17) and was charged $10 for the month of February, 1956 (T 18). Exhibits B-1 and B-2 admitted into evidence (T 18). Received Exhibit C, Notice from the City of Garden City that his airplane was destroyed by fire on the morning of March 6, 1956, Exhibit 'C' admitted into evidence (T 19).

"EXHIBIT 'C'.

"CITY OF GARDEN CITY
DEAN P. WILEY, City Manager
GARDEN CITY, KANSAS

"March 6, 1956

"Mr. G. M. Wehkamp
Cimarron, Kansas
Dear Mr. Wehkamp:
This is to advise that fire of undetermined origin completely destroyed the storage hangar and its contents (with the exception of a ½ ton Ford Pickup) on Tuesday morning at approximately 1 o'clock, March 6, 1956, at the Garden City Municipal Air Base.

Yours truly,

s/ DEANE P. WILEY
Deane P. Wiley
City Manager

"Prior to 6th of March, 1956, airplane was placed in the Garden City hangar (T 19) in the southeast corner back in the far corner from the door. Came to the airbase after the airplane was burned, found his airplane and it was of no value when he got there (T 20). Stored Aeronca Airplane in the hangar last part of January, 1956 (T 22). Could get the plane out any time he wanted to (T 22) if he paid the extra $5. 'That's how come that the first month was

$15 because I traded the airplane. They charged me an extra $5 to change it.' Never did pay the storage. If he wanted to keep it on dead storage couldn't take the plane out. Asked for dead storage. 'It was my understanding I wasn't supposed to move it.' When he was ready to take the plane home he could move it (T 23). Dealt with Neville Dunnan as agent of Garden City there at the air base. It was his understanding that as long as he kept the plane on dead storage he could not move it without taking it home. The bill of $15 for the month of January, 1956, and $10 for the month of February 1956 was charged to him (T 24).

"NEVILLE DUNNAN.

"City employee in March, 1956, (T 25) hangar attendant. Wehkamp dealt with him in connection with storing his plane at the Garden City Air Base. Examined Exhibit 'B-2' and stated that it was made out by him and the storage charge for the month of February, 1956, was $10, and that Wehkamp's plane was on dead storage. Wehkamp's plane was in the hangar immediately prior to the fire. 'It was pretty well back to the southeast corner (T 25).'

"Q. What is the definition of dead storage as you understand it, Mr. Dunnan?

"A. Dead storage, we had a policy out there that if a fellow wanted the plane in dead storage, wanted to leave it there for a month or two, wasn't going to fly it out and take it out every day or two, we had a special rate on that. If we wouldn't have to get it out every few days we would let him have it for a special rate, a little less than live storage where they take it out every day or two.

"Q. Examine this document and from your examination was this plane on dead storage?

"A. It was. (T 27).

"'If a fellow had his plane on dead storage and if he wanted to come in and have somebody take it out one or twice a month, wouldn't necessarily charge him for it, but if he made a habit of taking it out every day or two, it was a different thing.'

"Q. You couldn't tell whether he should be billed for dead storage until the end of the month, could you?

"A. That was at the discretion of the attendant there.

"Q. Mr. Wehkamp hadn't moved that plane during the month of February to your knowledge, had he?

"A. To my knowledge he hadn't moved it, no (T 28)."

As stated previously, at the close of plaintiff's evidence the city moved for a directed verdict—the basis of the motion being that the plaintiff "has failed to produce any evidence as to what caused the fire and as the evidence now stands there can only be conjecture as to the cause of the fire, and in such case the adoption [sic] of *res ipsa loquitur* does not apply."

This motion was sustained and the jury, in compliance with the court's direction, returned a verdict in favor of defendant city.

Plaintiff sets out five specifications of error. All, however, involve

and are based upon the sole question in the case which has heretofore been stated.

There is no occasion to enter into a lengthy discussion of the doctrine of *res ipsa loquitur*. The subect has been covered in many decisions of this court. We mention but a few.

One of the leading cases is *Mayes v. Kansas City Power & Light Co.*, 121 Kan. 648, 249 Pac. 599, in which it was said:

"We shall not undertake an exhaustive treatment of *res ipsa loquitur*. Literally translated the phrase means 'the thing itself speaks,' or 'the thing speaks for itself.' It is a term used in a limited class of negligence cases, referring to the method of proof of general negligence (as distinct from proof of specific negligent acts or omissions), by proving the injury, *together with the accompanying circumstances,* from which it may be inferred, and is reasonable to infer, that the casualty happened *only* because of some negligence of defendant. In actions for damages because of defendant's negligence, the general rule is, of course, that the negligence of defendant is never presumed, but must be established by proof. The cases in which *res ipsa loquitur* is applicable are *not* exceptions to the general rule. . . . Rather, in cases in which the phrase is applicable, proof of negligence is made, if at all, by circumstantial evidence; that is, the proof of the casualty *and of the surrounding circumstances* are such as to leave no reasonable conclusion to be drawn therefrom other than that the casualty happened because of the negligence of defendant." (pp. 650, 651.) (Emphasis supplied.)

The opinion cites with approval language in cases from other jurisdictions to the effect that the doctrine is merely a short way of saying that the circumstances attendant upon an accident are themselves of such a character as to justify the conclusion that the accident was caused by negligence; that the inference of negligence is deducible, *not* from the *mere happening* of the accident, *but from the attendant circumstances,* and that the doctrine, dangerous and uncertain at best, is never to be applied except where it not only supports the conclusion contended for, but also reasonably excludes every other.

To the same effect is *Starks Food Markets, Inc., v. El Dorado Refining Co.*, 156 Kan. 577, 134 P. 2d 1102, in which it was held:

"The mere fact an accident happens or an event occurs in which injury results is not sufficient to establish liability. Negligence is never presumed but must be established by proof. Where direct proof is lacking the *circumstances* may be proved, and if they are such as to leave no reasonable conclusion to be drawn *other than that the defendant be at fault,* they may be shown to make a prima facie case, and to warrant application of the doctrine of *res ipsa loquitur.*" (syl. 2.) (Emphasis supplied.)

In that case a gasoline tank in a public garage was being filled from a gasoline tank truck and a fire occurred. The owners of the

building, various tenants therein, and others claiming injury to property as a result of the fire, brought suit to recover damages. The question in the case concerned the sufficiency of the several petitions to state a cause of action based on the doctrine of *res ipsa loquitur*. In holding that they did not it was, among other things, said:

"If on trial the facts alleged were all that were shown, the trier of the fact could only indulge in *conjecture* as to the cause of the fire. In such case the doctrine of *res ipsa loquitur* should *not* be applied." (p. 583.) (Emhpasis supplied.)

The case of *Waddell v. Woods*, 158 Kan. 469, 148 P. 2d 1016, 152 A. L. R. 629, although being an action against a physician for malpractice predicated upon the doctrine of *res ipsa loquitur*, nevertheless contains a thorough discussion of the application of the doctrine generally, and in the course of the opinion it was said:

"With reference to the doctrine generally, it has been said that it is not a rigid or arbitrary doctrine to be mechanically applied, but a rule to be cautiously applied, dependent on the circumstances of the case. (Citing.)" (p. 472.)

In *Emigh v. Andrews*, 164 Kan. 732, 191 P. 2d 901, it was held that the doctrine of *res ipsa loquitur* is a rule of evidence and not of substantive law; that a *mere presumption* is *not* a thing that "speaks for itself," and that the established rule is that liability cannot result from an inference upon an inference or from presumption upon presumption. In the course of the opinion, speaking of the doctrine, it was said:

". . . And that means the *thing or instrumentality* involved speaks for itself. It clearly does not mean the *accident* speaks for itself. It means that when the initial fact, namely what thing or instrumentality caused the accident has been shown then, and not before, an inference arises that the injury or damage occurred by reason of the negligence of the party who had it under his exclusive control. The inference of negligence arising from the initially established fact compels the defendant, in order to relieve himself of liability, to move forward with his proof to rebut the inference of negligence. It therefore quite properly has been said the doctrine of *res ipsa loquitur* is a rule of evidence and not of substantive law." (p. 734.)

It was further said:

"Apart from statute it appears courts are reluctant in drawing an inference of negligence *from the starting of fires* for the reason they are frequent occurrences and in many cases result without negligence on the part of anyone. (Citing.) . . . These cases are not essential to a decision in this case and we cite them only for the purpose of indicating some of the dangers which might exist in drawing an inference of negligence *prior to the establishment of the cause of the fire*. In other words, according to these authorities, it would appear the rule prohibiting recovery by basing an inference on another inference or

presumption has peculiar force in the case of *fire.*" (p. 736.) (Emphasis supplied.)

To the same general effect is *Pierce v. Schroeder,* 171 Kan. 259, 232 P. 2d 460, where in paragraphs 2 and 3 of the syllabus it was held that the mere fact an accident happens or an event occurs in which injury results is not sufficient to establish negligence; that negligence is never presumed but must be established by proof, and that where *direct proof* is lacking the *circumstances* may be proved, and if they leave no conclusion to be drawn *other than that the defendant be at fault* they may be shown to make a *prima facie* case and to warrant application of the doctrine of *res ipsa loquitur.*

Measured by the foregoing rules relating to the application of the doctrine of *res ipsa loquitur*—and particularly with respect to fires— we have no difficulty in concluding that plaintiff's evidence fell far short of making out a case sufficient to go to the jury. All of the evidence—as abstracted—has been set out. Nowhere do we find any evidence of "attendant circumstances" from which it reasonably may be inferred that the loss occurred *only* because of negligence on the part of defendant city or its employees. In fact, the most that can be said of the evidence is that it merely establishes that on the night in question—fire of undetermined origin—destroyed the hangar and the airplane which was stored therein. The cause of the fire is left entirely to *conjecture*—which, under the authorities—is insufficient to bring the case under *res ipsa loquitur.*

Plaintiff cites *Travelers Ins. Co. v. Hulme,* 168 Kan. 483, 213 P. 2d 645, 16 A. L. R. 2d 793, as supporting his contention. The case is readily distinguishable. There, a petition alleged loss by fire of an automobile which had been left with defendant for repairs to its gasoline line and tank. The automobile and the garage at which it was being repaired, and the tools and equipment used to repair it, were at all times under the exclusive control of defendant. It was further alleged that while defendant was draining gasoline out of the gas tank and line into an open container inside his garage a fire broke out which destroyed the automobile, and that defendant's negligent operation of his garage and negligence in repairing the automobile caused the loss. In holding the allegations sufficient to invoke the application of the doctrine of *res ipsa loquitur,* it was said:

"Thus, in the case at bar the petition alleges the so-called foundation fact to be—the use of the gasoline by defendant, in defendant's garage and upon

defendant's premises, and while the car and all repair equipment and the gasoline in the open container were in the sole custody and under the sole dominion and control of defendant, caused the fire to destroy the Buick automobile. Having supplied the 'foundation fact' or 'initial fact' or 'thing' which produced the injury, the application of the doctrine of *res ipsa loquitur* will then infer negligence on the part of defendant in the doing or commission of the act. That is to say, the inference of negligence will arise from the established fact so as to compel the defendant to move forward with his proof in order to rebut such inference of negligence." (p. 488.)

The facts of the case before us likewise are distinguishable from those in *Strange v. Price Auto & Service Co.*, 169 Kan. 98, 218 P. 2d 208, which was a bailment case.

The instant case also is distinguishable from *Waddle v. Brodbeck*, 176 Kan. 583, 272 P. 2d 1066, which was an action to recover for personal injuries suffered by plaintiff while riding in a "tub" known as the "Sea Cruise Ride," an amusement device at a fair grounds. The facts relating to the alleged defective mechanical device are set forth in the opinion and need not be repeated here.

*Lamb v. Hartford Accident & Indemnity Co.*, 180 Kan. 157, 300 P. 2d 387, was an action to recover for injuries sustained by the sudden forward movement of a truck when it rolled down an incline. The petition, which was held sufficient under the doctrine of *res ipsa loquitur*, charged the negligent act or omission as being the failure to properly park the truck so that it would not break loose and injure plaintiff, and that it was not within his knowledge whether the injury was caused by defective equipment on the truck or the negligent and careless parking thereof.

In the Hulme, Waddle and Lamb cases, just mentioned, it will be seen that the so-called "initial fact" or "surrounding circumstances" were either pleaded or proved—as the case may be—thus bringing each within the doctrine of *res ipsa loquitur*.

The same is not true of the case before us—and, for reasons heretofore stated—plaintiff's evidence was insufficient to bring it within the doctrine and the judgment is affirmed.

WERTZ, J., dissents.