No. 46,532

VINCENT SCOTT RAMIREZ, by FRED P. RAMIREZ, Father and Next Friend, *Appellant*, v. TRAIL RIDGE APARTMENTS, INC., a Corporation, *Appellee*, v. CHARLES L. FAIRCHILD, d/b/a CHARLES L. FAIRCHILD HAULING, *Appellee*.

(505 P. 2d 757)

Opinion filed January 20, 1973.

*John Berglund*, of Clay Center, argued the cause, and *William L. Rees*, of Topeka, was with him on the brief for the appellant.

*Charles S. Fisher, Jr.*, of Fisher and Benfer, Chartered, of Topeka, argued the cause, and *Robert D. Ochs*, of the same firm, was with him on the brief for the appellee, Trail Ridge Apartments, Inc.

*Harold E. Doherty*, of Topeka, argued the cause and was on the brief for the appellee, Charles L. Fairchild, d/b/a Charles L. Fairchild Hauling.

The opinion of the court was delivered by

FOTH, C.: On October 4, 1966, five year old Vincent Scott Ramirez was severely injured while playing in the back yard of the apartment complex in Topeka where he lived. The culpable instrument was a trash and garbage hopper of the commercial variety, having a capacity of one cubic yard. It was constructed of steel, was mounted on four wheels, and weighed about 305 pounds, empty.

This hopper, with another just like it, was kept in a compound at the rear of the Ramirez apartment building. The compound consisted of a concrete slab largely surrounded by a wooden louvered fence or screen. The apartment complex contained 152 units divided into 26 buildings, and there were a number of similar two-hopper compounds located throughout the complex. Other areas were designated as play areas, and children had been forbidden to play in the trash compounds by verbal admonition of the complex manager and various parents.

The hoppers belonged to Charles L. Fairchild, a commercial trash hauler who furnished them and emptied them on a regular schedule under a contract with the owner of the apartment complex.

This suit was brought on Vincent's behalf against Trail Ridge Apartments, Inc., the owner of the apartment complex, and against Fairchild, the trash hauler. Under the pre-trial order liability of Trail Ridge was predicated on the following allegations of negligence:

"(1) Failing to maintain said trash enclosures in safe condition or to provide means sufficient to exclude small children from said areas,

"(2) Providing and maintaining in said area containers of unsafe design and condition,

"(3) In failing to provide safety devices or instructions for the protection of persons in or about said trash compound and in the vicinity of said trash containers."

As to Fairchild, his negligence was claimed to be:

"(1) Said Defendant warranted that said containers were of safe design and construction and suitable for the use for which intended, and breached said warranty by furnishing a container of unsafe and defective design and construction,

"(2) In furnishing a container in unsafe or defective condition,

"(3) In failing to provide safety devices or instructions for the protection of persons in or about said trash compound and in the vicinity of said trash containers."

Trail Ridge cross-claimed against Fairchild by a "third party complaint," claiming indemnification for any liability it might have for Vincent's injuries. Its theory was that the hopper in question had been selected and furnished by Fairchild, who should bear responsibility for any defects therein. The manufacturer and distributor of the hopper were at one time brought into the suit as fourth party defendants, but the pleadings and orders respecting them are not relevant to the disposition of this appeal.

In due course the case went to trial on the allegations of negligence set forth above. The evidence on behalf of plaintiff showed that Vincent came home from kindergarten about 11:30 a. m., had a snack, and went out to play with a three year old neighbor girl. A few minutes later a loud crashing noise was heard, followed by Vincent's screams. Two neighbors were the first adults on the scene, followed by Vincent's mother. Vincent was bleeding from the face and was badly hurt around his eye. The hopper was lying on its side, and there was a good deal of blood about. Addi-

tional testimony went to the treatment he received and the severity and permanent nature of his injuries. His father testified that Vincent had at various times given at least three versions of the accident, *i.e.*, that he was pulling the hopper, pushing the hopper, and swinging from the hopper. There was no other evidence as to just what Vincent was doing when the hopper overturned, and none as to why it overturned.

Defendants' motion for a directed verdict at the close of plaintiff's case was overruled. Defense evidence showed, among other things, that identical and similar hoppers were and had been in common use for many years—the City of Topeka owned 80 or 90 of them— and that there had never been a reported accident involving one to the knowledge of any of several witnesses who would be in a position to know.

At the close of all the evidence defendants renewed their motion and this time the court sustained it. The present appeal is from this order and the resulting judgment, and from the trial court's refusal to grant a new trial.

The directed verdict was granted on several grounds. The first was that at the time of his injury Vincent was not using that portion of the premises reserved by the landlord for the joint use of its tenants for the purpose for which it was intended, *i.e.*, Vincent was playing in the trash compound and not disposing of trash there. Thus, under traditional premises law, the trial court held that the landlord did not owe a duty to keep that portion of the premises reasonably safe for such unauthorized use, but only a duty to refrain from willful or wanton injury. In support were cited *Trimble v. Spears*, 182 Kan. 406, 320 P. 2d 1029; *Gillard v. Hoffman*, 103 Kan. 572, 175 Pac. 395; 49 Am. Jur. 2d, *Landlord and Tenant*, § 807; and PIK instruction 12.31, requested by all parties to the action.

The other grounds for the trial court's ruling were put as follows:

"Now leaving that point aside, what about the other evidence in the case. There is no testimony that the trash container was not perfectly adequate and safe for the purpose for which it was intended. There is no testimony whatsoever that the container was defective. Mrs. Ramirez, Mrs. Gomez, Mr. Ramirez, the boy himself, all testified that they did not know why this container overturned. Now there was some difference as to what the boy was doing with the container, but the evidence is absolutely undisputed that no one knows why the container overturned.

"On the basis of this record this Court is compelled to hold that there could be only mere speculation as to why the container in the case overturned.

Assuming that the child was pushing the container, which I will have to do since there is evidence of it, the laws of nature would result in only one conclusion; that it had to overturn in a direction opposite that from which the force was applied. It is impossible for the boy to apply force from the back and have it fall over on him in the front. There is no showing that the container was dangerous if used in the manner intended. The same could be said of bicycles, motorcycles, grocery carts, 50 gallon drums, any other kind of container that was being used for a purpose, could be pushed over by a child which is not one of its intended purposes.

"Thirdly, I want to point out that there is no evidence in this case that the landlord ever had any notice of any defect, assuming there was a defect. In this case there is no evidence of any notice whatsoever that any of these carts had overturned or that they were a danger. There was no notice to Mr. Fairchild. The evidence is undisputed that no one ever heard of one overturning before. There had been no complaints. There had been no problems with them.

"The evidence is undisputed that these containers are used throughout the city and throughout the state and throughout the country. The city owns 80 or 90 of them. There has been no trouble of instability. The only pertinent expert opinion on instability is that of Professor Kurata who gave his opinion that they are stable. In fact Mr. and Mrs. Ramirez testified that the container was suitable for the use for which it was designed as a trash container.

"There is no contention in this case that an attractive nuisance exists. There are not the elements of an attractive nuisance in the evidence."

We deem it unnecessary to pass on the applicability to a five year old boy of the "intended use" doctrine of premises law relating to landlords and tenants. (Cf. *Lemon v. Busey*, 204 Kan. 119, 461 P. 2d 145; *Roberts v. Beebe*, 200 Kan. 119, 434 P. 2d 789.) We agree with the trial court that the record is devoid of any evidence of negligence on the part of either defendant, and it is a truism that negligence must be proven and is not presumed. (4 Hatcher's Kansas Digest [Revised Edition], *Negligence*, § 56; 7A West's Kansas Digest, *Negligence*, § 121 [1].)

Plaintiff seeks to overcome this hurdle by invoking the doctrines of attractive nuisance and *res ipsa loquitur*. Both theories were put forth for the first time on his motion for a new trial, and were dealt with in the trial court's memorandum overruling the motion:

"In his argument on this motion counsel for plaintiff contended that there was sufficient evidence to go to the jury on the theory of attractive nuisance. The Court has concluded that the attractive nuisance doctrine has no application in this case for the reason that the evidence does not establish that the trash container involved in this case was a dangerous or defective instrumentality. The testimony of all of the witnesses was to the effect that the trash container was suitable for the use for which it was designed. Under the evidence it is clear that these containers are commonly used throughout the

City of Topeka, the State of Kansas, and throughout the country. They are in no way novel or unusual. The City of Topeka owns 80 or 90 of them which are used in connection with its trash collections. The plaintiff's parents Mr. and Mrs. Ramirez both testified that the container was suitable for the use for which it was designed. So did everyone else who testified on the subject. The attractive nuisance doctrine is normally applied only in cases where there is some *unusual* condition which is inherently dangerous and attractive to children. There is no evidence here that anyone ever heard of a similar trash container overturning before. There had been no complaints about them and no apparent problems with them.

"The trouble with plaintiff's position in this case is that no one really knows why the container overturned. The only thing that the evidence established was that the young plaintiff was playing on the containers or in the vicinity of the containers and somehow one may have fallen on him. This court does not believe that the attractive nuisance doctrine can be extended to the trash container under these circumstances.

"On the motion for a new trial counsel for plaintiff argued that the doctrine of *Res Ipsa Loquitur* should be applied. The Court has concluded that this doctrine can have no application in this case because none of the defendants had exclusive control over the trash container at the time the injury occurred. The evidence is undisputed that the plaintiff and his young girl companion were playing around in the trash compound and could have exerted force on the container either by jumping on it from the fence or by pushing it. The doctrine of *Res Ipsa Loquitur* is normally applied only where the instrumentality is within the exclusive control of the defendant at the time the injury occured which is contrary to the facts in this case."

Once again we think the trial court was eminently correct. As to *res ipsa* we have recently said:

"This doctrine of *res ipsa loquitur* is a rule of evidence and means 'the thing speaks for itself'. It does no more than obligate the defendant to go forward with evidence. (*Rupe v. Smith*, 181 Kan. 606, 313 P. 2d 293; *Waddle v. Brodbeck*, 176 Kan. 583, 272 P. 2d 1066.) Three elements are required for the doctrine to apply to a particular case: (1) The instrumentality or thing causing the injury must have been within the exclusive control of the defendant; (2) The occurrence must be of such kind or nature as ordinarily does not occur in the absence of someone's negligence and (3) The occurrence must not have been due to the contributory negligence of the plaintiff. (*Blue Stem Feed Yards v. Craft*, 191 Kan. 605, 611, 383 P. 2d 540.)" (*Vieyra v. Engineering Investment Co., Inc.*, 205 Kan. 775, 779, 473 P. 2d 44.)

As the court below observed, at the time of the accident the defendants were not in exclusive control of the hopper, either singly or jointly.

We have also noted:

". . . The doctrine is based in part on the consideration that where the management and control of the thing which produced the injury is vested in the defendant, it is within his power to produce evidence of the actual cause

that produced the injury, which the plaintiff is unable to present." (*Lamb v. Hartford Accident & Indemnity Co.*, 180 Kan. 157, 161-2, 300 P. 2d 387.)

This consideration is wholly absent here, where plaintiff had as much or more opportunity as the defendants to produce evidence as to the cause of the injury.

Plaintiff's chief reliance in this court is on the theory of attractive nuisance. That doctrine is of no assistance to him, for two reasons. First, "The attractive nuisance doctrine prevailing in this jurisdiction is based upon negligence." (*Bartlett v. Heersche*, 204 Kan. 392, 462 P. 2d 763, Syl. ¶ 2.) The doctrine may impose upon the landowner a duty of "due care" toward a trespassing child where such a duty would not otherwise obtain, but it imposes no higher duty. (*Caywood v. Board of County Commissioners*, 200 Kan. 134, 141, 434 P. 2d 708.) "It has been said the owner of a thing dangerous and attractive to children is not always and universally liable for an injury to a child tempted by the attraction. His liability bears a relation to the character of the thing, whether natural and common, or artificial and uncommon; to the comparative ease or difficulty of preventing the danger without destroying or impairing the usefulness of the thing, and, in short, to the reasonableness and propriety of his own conduct, in view of all surrounding circumstances and conditions." (*Brittain v. Cubbon*, 190 Kan. 641, 643-4, 378 P. 2d 141.) See also *Galleher v. City of Wichita*, 179 Kan. 513, 296 P. 2d 1062, and cases cited therein. What steps a reasonable prudent man could have taken to prevent the injury here would be, at best, pure conjecture—as the trial court observed.

But there is a more basic difficulty. Common to all our attractive nuisance cases is, first of all, the requirement that there be on the owner's land an object that is *dangerous*, as well as attractive, to children. Only if this condition is met does there arise on the part of the owner a duty to use reasonable care to protect trespassing children against the danger—of which he knows or should know. Here, as the trial court observed, there was absolutely nothing from which to infer that the trash hopper was dangerous beyond the fact of injury itself. There was certainly nothing to impart to the defendants actual or constructive knowledge of any danger.

Mere injury, of course, is insufficient; injury may be produced by many objects in common every day use which cannot be classified as "dangerous," even to children. See *Caywood v. Board of County*

*Commissioners,* supra; *Brittain v. Cubbon,* supra, and cases cited therein.

In short, when plaintiff's evidence failed to establish the dangerous nature of the hopper it failed to establish a duty on the part of defendants to protect against such danger. Absent a breach of duty there could be no liability on the part of the defendants, and the trial court correctly directed a verdict in their favor.

The judgment is affirmed.

APPROVED BY THE COURT.

PRAGER, J., not participating.