No. 43,514

In the matter of the estate of Howard Morse, Deceased. (SPRINGFIELD MONARCH INSURANCE COMPANY, a Corporation, [Claimant] *Appellant,* v. J. HOWARD MORSE, JR., Administrator of the Estate of Howard Morse, Deceased, [Respondent] *Appellee.*)

(391 P. 2d 117)

Opinion filed April 11, 1964.

*Herb Rohleder,* of Great Bend, argued the cause, and *Tudor W. Hampton* and *Jerry M. Ward,* both of Great Bend, were with him on the briefs for the appellant.

*Stanley E. Wisdom,* of Wichita, argued the cause, and *John J. Stang,* of La Crosse, and *Donald L. Buster,* of McCracken, and *Emmett A. Blaes, Roetzel Jochems, Robert G. Braden, J. Francis Hesse, James W. Sargent, Cecil E. Merkel, Harry L. Hobson, Bruce W. Zuercher, L. D. Klenda, Loren B. Corliss,* and *Charles M. Cline,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: This appeal springs from a petition for the allowance of a demand filed in the probate court of Rush County against the estate of Howard Morse, deceased. The petition was filed by the Springfield Monarch Insurance Company, a corporation, claiming to be subrogated to the rights of the owner of a dwelling, located in the City of La Crosse, on which it had paid fire damage to the owner. The intestate decedent was occupying the dwelling as a tenant at the time of the damage by fire. The claim was properly transferred to the district court for trial where that tribunal, after a hearing, sustained a demurrer to the claimant's evidence, rendered judgment against it for costs, and ultimately overruled its motion for a new trial. Thereupon claimant perfected the instant appeal.

The amended petition, as filed in the district court, is short and fully reflects the facts on which claimant relies for recovery. Omitting formal averments of no consequence pertinent portions of that pleading read:

"That on or about the 8th day of November, 1961, the petitioner had in force a policy of insurance for fire . . . issued to Mrs. Elma Jecha of Timken, Kansas, which policy insured a dwelling . . ., in the . . ., This dwelling at the time above-mentioned at about 8:00 o'clock a. m., was occupied by Howard Morse, deceased, as a tenant and was at the time in his exclusive possession, care, custody and control; and more particularly, he was in the exclusive possession and control of the interior and the fixtures therein where the fire started. That the fire and resulting damage occurred solely and proximately through the negligence and carelessness of the decendent, Howard Morse, who lost his life as a result of the said fire.

"That as a result of said fire, the petitioner was required to pay its policy holder . . . ($3,000.00) . . ."

"That by reason of the said petitioner's obligation to pay to Elma Jecha . . . ($3,000.00) under the provisions of its policy of insurance in force at the time the damage was sustained, it became subrogated to the rights, claims and interest of its insured, . . .

"That by reason of the contract between the petitioner's insured and the decedent, placing in the decedent the exclusive control, the decedent undertook to use due care and to take due care of said property while in his possession and to redeliver the same to the petitioner's insured upon the termination of the contract in the condition that said property was in at the time of placing it in his care.

"That said fire was solely and proximately caused by the carelessness and negligence of the said Howard Morse, deceased, and by reason thereof, caused damage to said property belonging to the petitioner's insured in the sum and amount of. . . ($3,000.00) . . . That by reason of said fire, this peti-

tioner under its policy of insurance issued to Elma Jecha was required to and did expend the sum of . . . ($3,000.00)."

The respondent administrator's answer to the foregoing amended petition was in the form of a general denial.

The evidence introduced by the claimant during the trial in district court, after joinder of issues, came from four witnesses and will now be noted without regard to the order in which they testified.

One witness, a local contractor, stated in substance that he had made an estimate of the fire loss and that it exceeded the insurance coverage. Another witness, an insurance adjuster, testified to the effect he had prepared the proof of loss and made payment of the loss to the insured under the terms of the policy after obtaining a subrogation receipt from her for the purpose of authorizing the company to proceed against the responsible party.

The insured testified in substance that she was the owner of the property, that it was rented to Howard Morse for $40.00 per month at the time it was destroyed by fire, that the company paid the full amount of the insurance policy and that a subrogation receipt was issued. Certain questions propounded to her and answers made thereto during the course of her examination read:

"DIRECT EXAMINATION.

"Q. When you rented this property to Mr. Morse you expected to get the property back in good condition except for normal wear and tear, is that correct?

"A. That thought didn't enter my mind.

"Q. Normally, when you rent property out, that is what you expect, is that not correct?

"A. I suppose, yes but I don't know. It never entered my mind. I wasn't thinking on terms of that when I rented it.

"Q. Yes, Once more—I may have asked this, but I'll ask it again—when you rented this property out to Mr. Morse you expected to get the property back in the same condition except for normal wear and tear, didn't you?

"A. Well, if I had thought about it I suppose, yes, but as I say, the thought never entered my mind when he rented the property, nor, to anyone else we rented to. We expected he'd take care of it, sure, but, that's why we have insurance, too."

The only evidence as to the fire or its cause came from the lips of the fire chief, A. W. Carbaugh, who was in charge of a volunteer fire brigade. His testimony will be summarized in part and quoted in part.

On the evening of November 8, 1961, he was called to the dwelling in question. The fire was concentrated in the southwest corner of

the living room. He found the deceased lying dead on his back in the northeast corner of the bedroom. His hand, face and chest were burned. A television, davenport and the corner of the living room were badly burned.

The testimony of this witness continued in the form of questions and answers which read:

"Q. Mr. Carbaugh, taking into consideration your experience and training, do you have an opinion as to where the fire started?

"A. I would say it started on the lounge, from the looks of the burns and everything.

"Q. And again taking into consideration your knowledge and experience in fire as fire chief, do you have an opinion as to how this fire started?

"A. It would have to be a guess, but from the looks of things it would look as though possibly he had a cigarette in his hand and set the lounge on fire.

"Q. Now, Mr. Carbaugh, in your occupation or or position as chief, in your training and experience, do you have an opinion as to whether fires of this type normally occur in sofas without some human agency being involved?

"A. We have had several something like this and most generally it's a cigarette and that's all.

"Q. Your answer would be, then, that there usually is a human agency involved?

"A. That would be right, a cigarette, or, something to that effect."

"CROSS-EXAMINATION

"Q. Mr. Carbaugh, you stated you are fire chief. Is this the volunteer fire department?

"A. It is.

"Q. How much time per week would you spend on fire chief work?

"Mr. Rohleder: Object as incompetent, irrelevant and immaterial.

"The Court: Overruled.

"A. Oh, we try to have a meeting about once a month, at least, and run fires whenever there is one, and see that the fire truck is kept up in shape and so forth. I couldn't give you any estimate on time—I couldn't do that.

"Q. Did you make a specific investigation in the case, or what?

"A. The general type of investigation. After the fire was over we looked it over to figure out, the best way we could, to see what happened.

"Q. In your investigation of the premises, after you put out the fire, did you discover any other possible causes of the fire?

"A. Oh, there could of been other things as far as that goes; there was a radio there and a television, and I remember an electric clock.

"Q. These are possibilities?

"A. Yes, they're possibilities."

This is a case where the issues on appellate review of the trial court's order and judgment sustaining the demurrer to the evidence can be simplified by this court directing attention at the outset of its opinion to certain material matters about which there appears to

be no real dispute between counsel for the contending parties. Such matters, some of them fortified by the court's own citation of legal authorities supporting them, may be stated thus:

(1) On the date of the involved fire the decedent, Morse, was a tenant of appellant's insured and had sole and exclusive use of the property in question.

(2) The record discloses no evidence as to the terms of the lease between the insured owner and the decedent.

(3) Under the conditions and circumstances disclosed in Nos. (1) and (2), *supra*, the universal rule in this jurisdiction, (see *Salina Coca-Cola Bottling Corp. v. Rogers,* 171 Kan. 688, Syl. ¶ 2, 237 P. 2d 218) and elsewhere (see 51 C. J. S., Landlord and Tenant, p. 1156 § 408; 32 Am. Jur., Landlord and Tenant, p. 669 § 783), is that independently of express convenant, the law imposes on a tenant the obligation to return the premises to the landlord at the end of the term unimpaired by the negligence of the tenant.

(4) Negligence is never presumed but must be proved and the burden of establishing negligence is upon the one asserting its existence (see cases cited in Hatcher's Kansas Digest [Rev. Ed.], Negligence, § 56, and West's Kansas Digest, Negligence, § 121 [1]).

(5) The right of appellant to maintain the action for purposes of enforcing subrogation rights, if any exist under the trems of the insurance policy and the evidence of record, is not contested (see *Ellis Canning Co. v. International Harvester Co.,* 174 Kan. 357, Syl. ¶ 1, 255 P. 2d 658).

From what has been previously stated it appears the all decisive issue here involved is whether the appellant's evidence was sufficient to establish negligence on the part of appellee's intestate decedent in causing the fire which destroyed the dwelling. Having set forth the evidence at length and carefully reviewed it in the light of our established rule (see, e. g., *Blankenship v. Fraker,* 173 Kan. 438, 439, 249 P. 2d 683; and *Worrell v. West,* 179 Kan. 467, 471, 296 P. 2d 1092, and decisions there cited), that in ruling on a demurrer to the evidence an appellate court does not weigh or compare contradictory testimony but must accept all evidence as true, give it the benefit of all inferences that may be properly drawn therefrom and consider only such portions thereof as are favorable to the party adducing it, we see no sound reason for laboring that question. It suffices to say that having reviewed appellant's evidence in the manner required by the rule we are convinced that

the most that can be said for such evidence is that it rests on mere conjecture and speculation and is wholly devoid of any circumstantial evidence which might lead to a contrary conclusion. Witness the testimony of the only individual who testified on behalf of appellant as to the cause of the fire which, when given the benefit of all favorable inferences, is specifically and directly to the point that his opinion as to how the fire started "would have to be a guess." We know of, and are cited to, no decisions recognizing that a *pure guess,* absent other corroborating circumstances, is sufficient to sustain a landlord's burden of establishing negligence on the part of a tenant in the starting of a fire which destroyed a leased dwelling—and we refuse to so hold.

In an obvious attempt to forestall the conclusion just announced, appellant directs our attention to *Strange v. Price Auto & Service Co.,* 169 Kan. 98, 218 P. 2d 208, which deals with the law of bailments; suggests the relationship existing between a landlord and tenant is not unlike that which exists between a bailor and bailee; asserts the law of bailments should be applied to a landlord-tenant or lessor-lessee relationship, and insists that the law as laid down in Syl. ¶ 2 of that case is applicable in the case at bar. Our decisions on this point do not support appellant's position. See *Wehkamp v. City of Garden City,* 187 Kan. 310, 356 P. 2d 826, a landlord and tenant case, which holds that the facts there involved are distinguishable from those involved in the Strange case *because it was a bailment case.* See, also, *Kimberlin v. Hicks,* 150 Kan. 449, 94 P. 2d 335, where it is said:

"Usually the owner of an estate for years is the tenant of a landlord who owns the reversion and to whom a stipulated rent is payable. In such case the protection accorded to the landlord for injuries to the inheritance by the tenant is governed by the law of landlord and tenant. . . ." (p. 455.)

Finally appellant contends its evidence is sufficient to make the doctrine of *res ipsa loquitur* applicable. We do not agree. Its evidence, as heretofore quoted, wholly failed to do so for the basic reason, inherent in the application of such doctrine, that no instrumentality or thing was proved to have been employed by the deceased, or any one, as the cause of the fire. That courts are reluctant to infer negligence from the starting of fires and that the doctrine here sought to be applied requires a clear showing by evidence of the thing or instrumentality involved is fully demonstrated in *Wehkamp v. City of Garden City,* supra, to which we adhere.

In that case, quoting extensively from *Emigh v. Andrews*, 164 Kan. 732, 191 P. 2d 901, we stated and held:

"In *Emigh v. Andrews*, . . . it was held that the doctrine of *res ipsa loquitur* is a rule of evidence and not of substantive law; that a *mere presumption* is *not* a thing that 'speaks for itself.' and that the established rule is that liability cannot result from an inference upon an inference or from presumption upon presumption. In the course of the opinion, speaking of the doctrine, it was said:

" '. . . And that means the *thing or instrumentality* involved speaks for itself. It clearly does not mean the *accident* speaks for itself. It means that when the initial fact, namely what thing or instrumentality caused the accident has been shown then, and not before, an inference arises that the injury or damage occurred by reason of the negligence of the party who had it under his exclusive control. The inference of negligence arising from the initially established fact compels the defendant, in order to relieve himself of liability, to move forward with his proof to rebut the inference of negligence. It therefore quite properly has been said the doctrine of *res ipsa loquitur* is a rule of evidence and not of substantive law.' (p. 734.)

"It was further said:

" 'Apart from statute it appears courts are reluctant in drawing an inference of negligence *from the starting of fires* for the reason they are frequent occurrences and in many cases result without negligence on the part of anyone. (Citing.) . . . These cases are not essential to a decision in this case and we cite them only for the purpose of indicating some of the dangers which might exist in drawing an inference of negligence *prior to the establishment of the cause of the fire.* In other words, according to these authorities, it would appear the rule prohibiting recovery by basing an inference on another inference or presumption has peculiar force in the case of *fire.*' (p. 736.) Emphasis supplied.)

. . . . . . . . . . .

"Measured by the foregoing rules relating to the application of the doctrine of *res ipsa loquitur*—and particularly with respect to fires—we have no difficulty in concluding that plaintiff's evidence fell far short of making out a case sufficient to go to the jury. All of the evidence—as abstracted—has been set out. Nowhere do we find any evidence of 'attendant circumstances' from which it reasonably may be inferred that the loss occurred *only* because of negligence on the part of defendant city or its employees. In fact, the most that can be said of the evidence is that it merely establishes that on the night in question—fire of undetermined origin—destroyed the hangar and the airplane which was stored therein. The cause of the fire is left entirely to *conjecture*—which, under the authorities—is insufficient to bring the case under *res ipsa loquitur.*" (pp. 315, 316.)

What has been heretofore stated and held compels a conclusion the trial court's action in sustaining appellee's demurrer to the appellant's evidence was proper and must be upheld. Appellant's claims of error in the overruling of its motion for a new trial are

based on the same grounds as those relied on for reversal of ruling on the demurrer, hence such claims require no further consideration or discussion.

The judgment is affirmed.

FONTRON, J., not participating.