**APPALACHIAN INSURANCE COM-PANY, Plaintiff,**

v.

**G. B. KNUTSON, H. H. Hoelzel, J. P. Hilmes, William B. Balliett and Dorothy (Mrs. William B.) Balliett, Defendants.**

**No. 15196–1.**

United States District Court
W. D. Missouri, W. D.
June 2, 1965.

Hocker, Goodwin & MacGreevy, St. Louis, Mo., Watson, Ess, Marshall & Enggas, Kansas City, Mo., for plaintiff.

Stinson, Mag, Thomson, McEvers & Fizzell, Swanson, Midgley, Jones, Blackmar & Eager, Kansas City, Mo., for defendants.

JOHN W. OLIVER, District Judge.

This diversity case pends on motion for summary judgment. That motion and the stipulation of facts entered into for purposes of that motion require that we define the scope of *res ipsa loquitur* under the law of Kansas.

Plaintiff insurance company insured the Baumritter Furniture Company against loss by fire of its goods stored in certain warehouses operated by the defendants Balliett. The goods thus stored were destroyed by fire on February 25, 1964. Plaintiff paid Baumritter Furniture Company the sum of $170,401.-57 and asserts its right of subrogation against defendants.

Plaintiff's complaint, incorporating the traditional language of *res ipsa loquitur* in a typical Federal court notice pleading, alleged in paragraph 4 that all "defendants negligently allowed the fire * * * to be enkindled within and to escape from a certain building known as the 'C' Building which was adjacent to the building in which such goods were stored."

In similar fashion plaintiff alleged in paragraph 5 of its complaint that the "C Building was an instrumentality which, at the time of the fire was under the joint and exclusive control of defendants, all of whom were members of a joint venture for the purpose of obtaining revenue from the operation of the building for the storage of goods for hire."

At the outset of this case, we overruled a motion to make more definite and certain, and ordered defendants to file their answer and to proceed with the usual discovery in order to ascertain the real basis of plaintiff's claim. In that order we specifically stated that we did not indicate any judgment either as to the applicable State law or the possible applicability of *res ipsa loquitur* that had been discussed, we thought prematurely, in the briefs filed by the parties in connection with the motion to make more definite and certain.

This case was set on our regular pre-trial docket on March 29, 1965. After receipt of plaintiff's usual pre-trial memorandum, defendants Knutson, Hoelzel, and Hilmes filed a motion for summary judgment, raising the question of whether plaintiff was entitled to proceed on a *res ipsa loquitur* theory.

Following a discussion of that motion at the pre-trial conference all parties stipulated that the law of Kansas was applicable; that an amended motion for summary judgment should be filed; and that no facts other than those contained in the stipulation were in existence or in dispute for purposes of ruling the amended motion for summary judgment which therefore now squarely presents the question of whether or not plaintiff is entitled to proceed on the *res ipsa loquitur* theory under the law of Kansas.

For purposes of this motion, the parties stipulated that the goods of Baumritter Furniture Company were stored with defendants Balliett in Building "J", a six story structure next to the "C" Building, a five story structure; that both Buildings "J" and "C" were two of a group of five contiguous buildings formerly occupied by the Wilson Packing

Company, designated by Wilson as Buildings "A", "K", "H", "C", and "J"; that Building "C" was owned by defendants other than the Ballietts but that it was occupied by all of the defendants under a joint venture; and that Building "C" should therefore be considered as being "under the joint and exclusive control of all of the defendants."

Paragraph C of the stipulation stated that:

"In the early morning hours of February 25, 1964, a fire, the cause of which is unknown, originated somewhere in Building 'C', and burned for 8 or 9 hours in Building 'C' before spreading to Building 'J'."

The parties also stipulated that plaintiff is subrogated to the interest of Baumritter Furniture Company for the sum of $170,401.57, which plaintiff paid to that company under the requirements of its fire insurance policy.

In its supporting brief, plaintiff suggests that "the problem on the motion for summary judgment, simply put, is to determine whether the complaint states a claim under the Kansas law applicable to the doctrine of *res ipsa loquitur*" (page 1 of plaintiff's brief).

Plaintiff puts the problem too simply. The question is not whether the complaint states a claim, but whether plaintiff is entitled to have its case sent to a jury under the theory of *res ipsa loquitur*, if it proves only that a fire of admittedly unknown origin in Building "C", after burning there for eight or nine hours, spread to Building "J" where plaintiff's insured's goods were destroyed.

Harper and James in Volume 2 of The Law of Torts, § 19.11, page 1099, correctly state that in spite of confusion and controversy among courts and commenta-

tors concerning some aspects of *res ipsa loquitur*, "all agree on one thing: *if* the plaintiff has made out a *res ipsa loquitur* case, he succeeds in avoiding a motion for non-suit or directed verdict at the close of his own case." Those authors add that "this agreed-upon proposition is nearly always the all-important one."

This case vividly illustrates the procedural importance and impact of a determination that *res ipsa loquitur* does or does not apply to a particular factual situation. The facts stipulated for purposes of this motion pose the simple, but all important, question of whether, under Kansas law, it must be said that a plaintiff may get to the jury under *res ipsa loquitur* if he proves, in the language of the facts stipulated for purposes of this motion, that a fire of undetermined origin spread from "an adjacent building ["under the joint and exclusive control of all the defendants"] in which it had burned eight or nine hours to the building in which plaintiff's insured's goods were stored and subsequently destroyed."

If those facts do not command the application of *res ipsa loquitur*, plaintiff obviously must prove specific negligence before it is entitled to recover.

We are convinced that the courts of Kansas would not hold that *res ipsa loquitur* is applicable to the facts stipulated for purposes of this motion. We so hold.

Kansas, as have most of the States, adopted the rule of *res ipsa loquitur* announced a hundred years ago by Chief Justice Erle in Scott v. London & St. Katherine Dock Co., 3 H & C 594 (1865).[1] That was done in Potter v. Rorabaugh-Wiley Dry Goods Co., 83 Kan. 712, 112 P. 613, 32 L.R.A.,N.S., 45 (1911), a falling awning case.

1. Dean Prosser suggests that the Latin phrase was "the offspring of a casual word of Baron Pollock during argument in a case [Byrne v. Boadle, 2 H & C 722, 159 Eng.Rep. 299 (1863)], in which a barrel of flour rolled out of a warehouse window and fell upon a passing pedestrian." Dean Prosser also believes that the "doctrine" of res ipsa loquitur "has been the source of so much trouble to the courts that the use of the phrase itself has become a definite obstacle to any clear thought, and [that] it might better be discarded entirely." See § 42, page 201, of Prosser on Torts, Second Edition.

The first fire case in Kansas involving *res ipsa loquitur*, cited by neither side, was Munger v. Beiderwell, 155 Kan. 187, 124 P.2d 452 (1942). In that case a landlord sued his tenant to recover damages for the destruction of a barn by fire. In appealing from the trial court's action sustaining a motion to strike portions of an amended complaint, plaintiff contended that "the petition [was] sufficient under the doctrine of *res ipsa loquitur*." Plaintiff argued that "he was not present and does not know what caused the fire but that defendant was present and knew, or should have known, the cause of the fire."

The Supreme Court of Kansas held that earlier Kansas cases applying *res ipsa loquitur* to particular factual situations other than factual situations involving fire "are not in point and do not support appellant's contention."

Forecasting that the Kansas law relating to the applicability of *res ipsa loquitur* to factual situations involving fire would develop on a case by case basis, the Supreme Court of Kansas added:

> "It may be conceded the circumstances under which a fire occurs may sometimes be such as to justify the application of the doctrine of *res ipsa loquitur* and thus impose upon the defendant the burden of proving his freedom from fault. See, 11 R.C.L. p. 955. * * * In the instant case no instrumentality of any kind or character was alleged to have been employed by anyone which could justify the application of the doctrine."

The citation of 11 R.C.L., p. 955 is to Section 13 of the article in Ruling Case Law on Fires. It was there stated that:

> "It is the well established general rule that the destruction of property by fire, either upon the premises where it starts or is kindled, or on other property to which it is communicated, does not raise a presumption of negligence, either in the kindling or management of the fire, and that in all such cases the burden of proof is upon the plaintiff to show that the damage was caused by the negligence of the party kindling the fire or allowing the same to spread. Negligence or misconduct, being the gist of the action, must be proven."

That section makes it apparent that *res ipsa loquitur* would be held applicable to fires only in exceptional cases. As is apparent from the above quotation from Munger, the Supreme Court of Kansas paraphrased the following sentence from the cited section of Ruling Case Law in that case:

> "The circumstances under which a fire occurs may, however, sometimes be such as to justify the application of the doctrine of *res ipsa loquitur*, and impose upon the defendant the burden of proving his freedom from fault. Thus, for instance, it has been held that the burning of a house through fire set from the sparks of a fire-pot placed upon its roof by workmen engaged in repairing it will be presumed to have been caused by their negligence."

Starks Food Markets v. El Dorado Refining Co., 156 Kan. 577, 134 P.2d 1102 (1943), was described by Judge Graven of the Northern District of Iowa in Highland Golf Club of Iowa Falls, Iowa v. Sinclair Refining Co., N.D.Iowa 1945, 59 F.Supp. 911, at 917, as "the leading case" on the question of the applicability of *res ipsa loquitur* to factual situations involving fires.[2]

---

**2.** Highland Golf Club involved an application of the Iowa law. That excellent decision reviewed not only the Iowa cases but cases from many other jurisdictions. Judgment was rendered for the defendant on a directed verdict. It is interesting to note that Judge Graven, not unlike Dean Prosser (as noted in footnote 1) took occasion to quote Judge O'Dunne's suggestion that the doctrine of *res ipsa loquitur* "is a pious symbol, long used by the priests of the law to exercise spirits. It is some of that ancient and sacred legal nomenclature

Starks Food Markets was an appeal from an order sustaining a demurrer to a petition that attempted to state a cause of action based on *res ipsa loquitur*. The factual situation involved a fire in a garage that occurred during or after the delivery of gasoline from a tank truck to a portable tank of a tenant in the building in which the garage was located.

That case recognized that "there is not much controversy about the rule, the question is its applicability" (l. c. 1106 of 134 P.). The rule was stated in its traditional language as follows:

"It is settled law that the mere fact an accident happens or an event occurs in which injury results is not sufficient to establish liability; that negligence is never presumed but must be established by proof; that where direct proof is lacking the circumstances may be proved, and if they are such as to leave no reasonable conclusion to be drawn other than that the defendant be at fault, they may be shown to make a prima facie case, and to warrant application of the doctrine of *res ipsa loquitur*." (l. c. 1105 of 134 P.2d.)

In Starks Food Markets the Supreme Court of Kansas determined that the postulate that in the ordinary course of events the fire involved in that case would not have happened except for the defendant's negligence could not be accepted.[3] On page 1106 of 134 P.2d, it was held:

"[G]iving to the allegations of the amended petition a liberal interpretation, it is apparent there is no allegation that the defendants were in charge of or had any control of the portable tank or where it sat inside the garage. * * * We do not know from the petition whether there was gas or electric motors being operated in the garage, whether its doors were open or closed, whether there was any fire to heat the garage, whether it was free from explosive fumes or vapors, or what the situation was except that in making delivery the defendants were in charge of their tank truck and its contents. *If on trial the facts alleged were all that were shown, the trier of the fact could only indulge in conjecture as to the cause of the fire. In such case the doctrine of res ipsa loquitur should not be applied.*" (Emphasis ours.)

It is interesting to note that the same fire and the same legal theory was the subject of a later case in this Court. In Bruening v. El Dorado Refining Co., W.D.Mo.1943, 53 F.Supp. 356, Judge Reeves dismissed the case; held that *res ipsa loquitur* was not applicable; and noted that "[t]here are many causes that may have operated to produce the fire" (l. c. 358 of 53 F.Supp.).

Emigh v. Andrews, 164 Kan. 732, 191 P.2d 901 (1948), involved a fire that started in the stubble of a wheatfield and spread to destroy sixty acres of uncut wheat. Plaintiff alleged that defendant's truck had passed over the spot where the fire commenced. But plaintiff pled that he could not "allege the specific act or acts of negligence of defendant or his employees which caused said fire" (l. c. 903 of 191 P.2d). That case, like this case, therefore involved the spread of a fire of unknown origin.

---

which means nothing more than a statement that 'the obvious is self-evident'" (l. c. 915 of 59 F.Supp.). Cf. the Latin from Baten's Case, 9 Coke 53 (1610): "*Lex non requirit verificari quod apparet curiae*," or "The Law does not require proof of that which is apparent to the court." We are indebted to Mark Shain's *Res Ipsa Loquitur*, (Parker & Company, 1945) for the quotation.

3. See Harper and James: The Law of Torts, Second Edition, § 19.5, page 1075, et seq. for the theory of res ipsa loquitur. And see particularly page 1079 where those authors point out that "the logic used in *res ipsa loquitur* cases is the same as that in all cases of circumstantial evidence," adding that "this logic depends in its application on the assumption or rejection of postulates as to probabilities which are often very doubtful."

Emigh followed Starks Food Markets and noted first that the latter case had held that "where the triers of the facts can only indulge in conjecture as to the cause of a fire the doctrine of *res ipsa loquitur* should not be applied" (l. c. 904 of 191 P.2d). Emigh specifically held in regard to fires of unknown origin that "[i]t seems to us that so long as the thing which occasions this injury is unknown it cannot be said to speak for itself and thereby raise an inference of negligence" (l. c. 905 of 191 P.2d).

Emigh, as do many of the Kansas cases, emphasized that "the doctrine of *res ipsa loquitur* is a rule of evidence and not of substantive law" (l. c. 903 of 191 P.2d). And that case added that "the rule prohibiting recovery by basing an inference on another inference or presumption has peculiar force in the case of fire" (l. c. 904 of 191 P.2d).

Emigh, after analysis of cases from other jurisdictions, including Highland Golf Club above-mentioned, noted that:

"Apart from statute it appears courts are reluctant in drawing an inference of negligence from the starting of fires for the reason they are frequent occurrences and in many cases result without negligence on the part of any one." (l. c. 904 of 191 P.2d).

It should also be noted in passing that Emigh recognized, as we recognized in this case, that "it must not be inferred from the fact that the doctrine of *res ipsa loquitur* is inapplicable there can never be.recovery on the theory of circumstantial evidence if the facts warrant it" (l. c. 904–905 of 191 P.2d).

Emigh ruled only on the sufficiency of a petition to state a cause of action under *res ipsa loquitur*. The present motion for summary judgment tests only whether plaintiff, on the facts stipulated for purposes of the pending motion, is entitled to the benefit of *res ipsa loquitur*. Emigh did not prohibit, nor will our disposition of this motion prohibit plaintiff from making proof of specific negligence by any and all relevant evidence.

Travelers Ins. Co. v. Hulme, 168 Kan. 483, 213 P.2d 645, 16 A.L.R.2d 793 (1950), a fire case involving the draining of gasoline from an automobile in a garage, followed Starks Food Markets and Emigh, but distinguished those cases on the facts. Waterbury v. Riss & Co., 169 Kan. 271, 219 P.2d 673 (1950), another case strongly relied upon by plaintiff, involved neither a fire nor *res ipsa loquitur*, except in a very limited way.[4]

Lamb v. Hartford Accident & Indemnity Company, 180 Kan. 157, 300 P.2d 387 (1956), still another case relied upon by plaintiff that is not a fire case, is also clearly distinguishable. Indeed, the following summary of Kansas law from that case, supported as it is by the citation of Starks Food Markets, supports defendants' rather than plaintiff's construction of the applicable law:

"It is settled in Kansas that the fact an injury occurs is not sufficient to establish liability; that negligence is never presumed but must be established by proof; that in cases where the doctrine is applicable and direct proof is lacking, proof is made, if at all, by circumstantial evidence: that is, proof of injury and of the circumstances surrounding its occurrence are such as to leave no reasonable conclusion to be drawn other than that the injury occurred because of defendant's want of care." (l. c. 391 of 300 P.2d.)

The rationale of the Kansas rule of decision in *res ipsa loquitur* cases is apparent from the following quoted from Lamb:

"The application of the doctrine presents principally the question of the sufficiency of circumstantial evidence, here, a reasonable conclusion, to establish or to justify the injury

---

4. See page 685 et seq., of 219 P.2d, reporting Waterbury v. Riss & Co., where the proposition that proof of specific negligence destroys a plaintiff's right to rely on *res ipsa loquitur* is discussed and apparently excepted in a procedural situation in which defendants, rather than plaintiff, made such proof.

in inferring, the existence of the principal fact in issue, the defendant's negligence. The attending circumstances must warrant a reasonable conclusion that something other than defendant's negligence caused the injury to make the doctrine inapplicable." (l. c. 392 of 300 P.2d).

■ The Kansas law reasons that if in the ordinary course of human experience it can fairly be said that all the factual circumstances point to probable negligence on the part of a defendant, then a *res ipsa* case is presented. But if those factual circumstances warrant a reasonable conclusion to the contrary, then a *res ipsa* case is not presented.

Kitchen v. Smith, 184 Kan. 188, 334 P.2d 413 (1959), falls on the same side of the line as did Hulme. Kitchen, a fire case involving a hay baler, like Hulme, distinguished Emigh, which fell on the other side of the line.[5] These cases are not in conflict; they are simply distinguishable on their particular facts.

Wehkamp v. City of Garden City, 187 Kan. 310, 356 P.2d 826 (1960), reviewed the action of a trial court that sustained a defendant's motion for directed verdict on the theory that *res ipsa liquitur* would not take a case to the jury where the only proof was that plaintiff's airplane had been destroyed by a hangar fire of unknown origin.

The Supreme Court of Kansas noted that "[t]here is no occasion to enter into a lengthy discussion of the doctrine of

*res ipsa loquitur*" because "[t]he subject has been covered in many decisions of this court" (l. c. 829 of 356 P.2d).[6] Feeling obligated to "mention but a few" of the cases, Wehkamp followed and quoted extensively from both Starks Food Markets and Emigh. It then held:

"Measured by the foregoing rules relating to the application of the doctrine of *res ipsa loquitur*—and particularly with respect to fires—we have no difficulty in concluding that plaintiff's evidence fell far short of making out a case sufficient to go to the jury. * * * [T]he most that can be said of the evidence is that it merely establishes that on the night in question fire of undetermined origin destroyed the hangar and the airplane which was stored therein. The cause of the fire is left entirely to *conjecture*, which, under the authorities, is insufficient to bring the case under *res ipsa loquitur*." (l. c. 831 of 356 P.2d, emphasis the court's.)

Plaintiff in that case, as plaintiff in this case, relied upon Hulme and Lamb. Both were distinguished.

The Supreme Court of Kansas' specialized treatment of fire cases which involve fires of unknown origin, as evidenced by its consistent language "—and particularly with respect to fires—" (quoted above from Wehkamp), and as evidenced by its notice that "courts are reluctant in drawing an inference of negligence from the starting of fires" (above quoted from Emigh) is a facet of the Kansas *res*

---

5. See page 416 of 334 P.2d, where Kitchen held that Emigh "is recognized as good law" and where it was stated that "the omission in the Emigh case is supplied [because the petition in Kitchen] specifically alleged that 'said *hay baler unit* caused matter of combustible quality to come in contact with such prairie grass and ignite the same and start a *fire.*' (Emphasis added.)"

6. The Kansas Supreme Court's disenchantment with reiteration of the obvious was also noted in the Kitchen case. On page 418 of 334 P.2d of Kitchen, it was stated that "[t]his court has been prone to write a chapter on the doctrine of *res*

*ipsa loquitur* each time such a case has been before it * * *. We shall not, therefore, further pursue the subject * * * except to refer the reader to the recent case of Worden v. Union Gas System, 182 Kan. 686, 324 P.2d 501, wherein both court and dissenting opinions accumulate many of our cases and discuss them."

The great number of Kansas cases on the subject of *res ipsa loquitur* were undoubtedly produced by the peculiarity of the recently abandoned Kansas practice that permitted appeals from trial court orders either sustaining or overruling demurrers to a petition.

*ipsa loquitur* rule of decision that cannot fairly be ignored.[7]

Rudy v. Whaley, 188 Kan. 118, 360 P.2d 863 (1961), involved a filling station fire. Under the allegations of the particular petition there involved, the Kansas Supreme Court held that the case was "clearly controlled by Kitchen v. Smith, supra" (l. c. 868 of 360 P.2d). Defendants in that case, of course, unsuccessfully relied upon Emigh. In much the same manner as did Kitchen, Rudy held that "[t]he omission in the Emigh case is supplied in the amended petition in the instant case, wherein it is alleged that defendants' transport truck caught fire and the fire from the transport truck caught the service station operated by plaintiffs afire, burning the same to the ground" (l. c. 867 of 360 P.2d). In spite of plaintiff's extensive treatment of Rudy, all that need and can be said about that case is that the Supreme Court of Kansas put it on the same side of the line as they put Kitchen and Hulme.

The stipulation of the parties in this case, of course, places this case within the orbit of Starks Food Markets and Emigh, because the parties are agreed, for purposes of this motion, that no one knows what caused the fire that spread from Building "C" to Building "J" where the goods were stored. We must deal with a case of a fire of unknown origin. And we must deal with such a case as we believe a Kansas court would deal with it on the basis of how the Kansas courts have dealt with similar cases in the past.

Blue Stem Feed Yards, Inc. v. Craft, 191 Kan. 605, 383 P.2d 540 (1963), and In re Morse's Estate, 192 Kan. 691, 391 P.2d 117 (1964), the two most recent Kansas cases, do not add much to the picture. Blue Stem Feed Yards, involving an action to recover for the loss of sheep feeding barns by a fire allegedly caused by a stove used by repairmen was held to state a *res ipsa* case. Emigh, Lamb, and Wehkamp were all cited with approval. The Supreme Court of Kansas merely added another case on the same side of the line with Kitchen, Hulme and Rudy.

In re Morse Estate held that the mere proof of a fire of unknown origin does not establish a *res ipsa loquitur* case under the Kansas law. In adding another case on the Starks Food Market and Emigh side of the line, the court noted that "no instrumentality or thing was proved to have been employed by the deceased, or by any one, as the cause of the fire" (l. c. 122 of 391 P.2d). The reluctance of Kansas to extend *res ipsa loquitur* to fire cases of unknown origin was again noted in its holding. It was held that:

> "*That courts are reluctant to infer negligence from the starting of fires* and that the doctrine here sought to be applied requires a clear showing by evidence of the thing or instrumentality involved is fully demonstrated in Wehkamp v. City of Garden City, supra, to which we adhere." (l. c. 122 of 391 P.2d, emphasis ours.)

In Franks v. Groendyke Transport, 10 Cir. 1956, 229 F.2d 731, the Tenth Circuit reviewed the action of then District Judge Delmas C. Hill, who directed a verdict for the defendant at the close of all the evidence in a case involving a fire of unknown origin that occurred incident to the delivery of gasoline.

The Court of Appeals noted that "[n]o one testified that he saw the fire start or knew its origin" (l. c. 733 of 229 F.2d).

Plaintiffs in Franks "did not plead or attempt to prove any specific act or acts of negligence"; they, as plaintiff in this case, attempted to rely "upon the long established doctrine of *res ipsa loquitur*" (l. c. 734 of 229 F.2d).

---

7. See also the specialized discussion of the fire cases in Munger v. Biederwell, supra, and also our quotation from that case above. And see still further, our later discussion in this opinion of In re Morse's Estate, 192 Kan. 691, 391 P.2d 117, the most recent case, wherein the reluctance of courts "to infer negligence from the starting of fires" will be quoted in the body of this opinion.

Judge Hill's action was affirmed on the authority of Starks Food Markets and Emigh. The fact that a distinguished District Judge of Kansas (now a Circuit Judge) applied those cases as we shall apply them, and the fact that the Tenth Circuit affirmed, indicates that we read those cases in accordance with the law of Kansas.

The words *"res ipsa loquitur"* have long represented a short and apparently easy way of referring to a not uncomplicated concept. The cases cited in Mark Shain's work on *Res Ipsa Loquitur*, Parker & Co., 1945, demonstrate that practically every appellate court in the land has either adopted or paraphrased the deceptively simple language of Chief Justice Erle in the London & St. Katherine Dock case. Over the years, reams of paper have been devoted to the questions of whether a particular accident would or would not ordinarily occur without negligence; whether a particular defendant did or did not have exclusive control of the instrumentality; whether a particular accident would or would not have occurred with or without any action on the part of the defendant; whether particular evidence was or was not more accessible to the defendant than to the plaintiff; and whether a particular defendant had or should have had superior knowledge. Other variations of formularistic language inevitably developed as particular courts sought to explain and justify in the traditional language of Chief Justice Erle their ultimate conclusion that a particular case, on its particular facts, should or should not be permitted to go to a jury as a case entitled to the benefit of *res ipsa loquitur*.

■■ An application of *res ipsa loquitur* to a particular case represents the ultimate determination of a particular court that the particular factual situation involved is so exceptional that the law should permit the plaintiff's case to go to the jury, at least temporarily, in spite of the fact that plaintiff has not, as the law usually requires, proved any negligence on the part of the defendant. When a particular court decides that *res ipsa loquitur* is applicable, it is fully familiar with the juridical facts of life that its determination means that the usual penalty for a plaintiff's failure to prove negligence will not be visited upon him because *res ipsa loquitur* is legally considered as a substitute for the usually required proof. When a court determines that *res ipsa loquitur* is not applicable to a particular factual situation, it determines that the practical probabilities are such that it cannot be judicially said that the particular factual situation speaks loudly enough to permit a court to allow a substitution for evidence to be made.

If *res ipsa loquitur* is held to be inapplicable, courts return to the familiar language and pattern of holding that a verdict must be directed for the defendant because no evidence of negligence was adduced by plaintiff upon which a jury will be permitted to base a verdict. It is clear that if a particular plaintiff is not legally entitled to the benefit of *res ipsa loquitur*, and if he has failed to prove negligence, then he must be adjudged to have failed to carry his burden of proof.

Mr. Justice Holmes pointed out a long time ago, on page 120 in his Common Law (Little, Brown, 1943 Edition, Thirty-fifth Printing), that "when a judge rules that there is no evidence of negligence, he does something more than is embraced in an ordinary ruling that there is not evidence of a fact." Holmes explained that the judge "rules that the acts or omissions proved or in question do not constitute a ground of legal liability, and in this way the law is gradually enriching itself from daily life, as it should."

In similar manner, when a court holds a plaintiff is or is not entitled to the benefit of *res ipsa loquitur* in a case involving the spread of a fire of unknown origin, it either permits or refuses to permit a plaintiff to get to the jury without adducing the quantum of evidence the law requires of all other plaintiffs in ordinary negligence actions. The obvious question of broad social policy in-

volved is a question for the Kansas courts to decide; it is our duty to determine and follow what Kansas had decided; it is not our duty to decide that question as we might think Kansas should have decided it.

We do not suggest that we believe Kansas has adopted an unreasonable policy in regard to the inapplicability of *res ipsa loquitur* to cases involving fires of admittedly unknown origin. Courts other than Kansas who follow and apply the same common law concepts of *res ipsa loquitur* have reached exactly the same conclusion as Kansas. Such consistency of treatment of cases involving unknown fires would tend to fortify both the correctness of the Kansas law and our determination of the state of that law.

Our research indicates that every case that has squarely considered the question of the applicability of *res ipsa loquitur* to fires of unknown origin has reached a result consistent with that reached by Kansas. We look to but a few of those cases.

The President Wilson, N.D.Cal.1933, 5 F.Supp. 684, involved a fire on a barge in which "[t]he evidence fails to disclose the exact cause of the fire" (l. c. 685 of 5 F.Supp.). The court held that "[i]t is apparent that it could have originated from any of the following sources: First, an incendiary; secondly, a spark; thirdly, a surreptitious smoker" (l. c. 685 of 5 F.Supp.). In answering the question of whether *res ipsa loquitur* applied, the court, after noting that "the cause of the fire is unknown" and that "[i]t might have been caused from any one of several sources" held:

> "An adoption of the libelant's contention, namely, that, granting the cause of the fire to be unknown, yet, inasmuch as the respondent was in possession of the place of the fire, to wit, the barge, the doctrine of 'res ipsa loquitur' applies is going far afield of the principle. Such a view is tantamount to saying that whenever a fire occurs on board a vessel * * * and the source of the fire is unknown, the mere possession

of the place (the vessel) of the fire sets the doctrine in operation. Obviously, this is an unwarranted expansion of 'res ipsa loquitur.'"

Le Zotte v. Lindquist, 51 S.D. 97, 212 N.W. 503 (1927) illustrates the reluctance of the Kansas law to extend *res ipsa loquitur* to fires of unknown origin is a reluctance shared by other States. The South Dakota court examined the early English common law, noted its change before the American Revolution, and held that:

> "It is now the general rule in this country that, 'when a fire accidentally starts on the premises of a private owner of property, he is not, in the absence of a statute to the contrary, liable for the damages caused by its communication to the property of another unless it started through his negligence'. 11 R.C.L. 940 and 941." (l. c. 505 of 212 N.W.)

That court continued:

> "Consequently, we find, that, when this doctrine of *res ipsa loquitur* is applied to fires, 'the general rule is that the destruction of property by fire does not raise a presumption of negligence either in the kindling or the management of the fire." (l. c. 505 of 212 N.W.)

We have already noted Judge Graven's decision in the Highland Golf Club case. His reliance upon what he called "the leading case" of Starks Food Market demonstrates the consistency of Highland Golf Club with our determination of the Kansas law.

Menth v. Breeze Corporation, 4 N.J. 428, 73 A.2d 183, 18 A.L.R.2d 1071 (1950), is the subject of an annotation in 18 A.L.R.2d 1081 on the subject of the "Liability of one on whose property accidental fire originates for damages from spread thereof." Practically all of the cases are collected either in the cited case or in the annotation.

In a careful opinion in the Menth case, Judge Ackerson held that *res ipsa loquitur* did not apply to a case in which the

fire originated from unknown causes in a shed in which highly inflammable material was stored, and which quickly spread to a frame apartment house in which plaintiff resided. He also held, however, that under the particular facts there involved, plaintiff could make out a prima facie case in accordance with the usual principles of evidence.

On the reluctance of courts to extend *res ipsa loquitur* to cases involving fires of unknown origins, the Menth case held:

"The rule of *res ipsa loquitur* is infrequently applied to cases involving fires, and to a lesser extent to explosion cases [citing many cases]. The reasons are not difficult to perceive. The cause of a fire is generally unknown, fires commonly occur where due care has been exercised as well as where due care was wanting. Where a fire originates on a defendant's premises, that alone is not evidence that it was started by the defendant, nor that the fire was caused by any negligence on its part. * * * The general rule * * * is that the destruction of property by fire, either on premises where it starts, or upon other property to which it is communicated, does not of itself raise a presumption of negligence in either the kindling or management of the fire unless there are special circumstances present that lead to a reasonable conclusion that due care was wanting. 22 Am.Jur. (Fires) § 78, p. 644."

On the question of whether possession of the premises may be forced, black-letter fashion, into a holding that the premises are, in fact, the "instrumentality" over which defendant must have control,[8] Menth held:

"In case of fire the rule requires that the actual cause of it must have been under the exclusive control of the party charged with negligence. * * * Mere possession of the premises and shed from which the fire spread is not a basis for the application of the *res ipsa loquitur* rule."

And on the question of whether a plaintiff is entitled to get to the jury in the usual manner, the Menth case held:

"The rejection of that rule [of *res ipsa loquitur*] does not mean that the plaintiffs are precluded from showing defendant's negligence by circumstantial or direct evidence of specific acts from which liability may be inferred."

The cases in the annotation in 18 A.L.R.2d 1081, 1093, and the cases in the earlier annotations reported in 42 A.L.R. 783, 814 and 111 A.L.R. 1140, 1148, which are supplemented by the annotation in 18 A.L.R.2d, are consistent both with Menth and, in turn with what we have determined to be the applicable Kansas rule of decision. We therefore direct attention only to Tedrow v. Des Moines Housing Corp., 249 Iowa 766, 87 N.W.2d 463, 86 A.L.R.2d 830 (1962), decided subsequent to those annotations, because of that case's reliance upon Starks Food Markets in a manner consistent with our treatment of that case.

Tedrow affirmed a directed verdict for the defendant on the theory that *res ipsa loquitur* was not applicable to a wrongful death case in which the deceased's death resulted from a fire of unknown origin, in the face of plaintiff's evidence that established that the fuse box on the ground floor of the building contained pennies as substitutes for fuses. The Iowa Supreme Court was impressed with what it called Judge Graven's "thorough and well considered" opinion in Highland Golf Club and equally impressed with

8.  Plaintiff in this case argues, for example, that defendants' exclusive control of Building "C" meets part of the traditional test for *res ipsa loquitur*. On page 5 of its suggestion it is argued that "a building has traditionally been the very thing which defendant controlled in *res ipsa loquitur* cases." Again on page 8 plaintiff suggests that it is unarguably true that "a building may be an 'instrumentality' or 'thing' for the application of the doctrine of *res ipsa loquitur*."

Starks Food Markets. In regard to the latter case it held that the question asked in the following quotation answers itself in view of apt language it quoted from Starks Food Markets:

"Many things, among them accumulations of waste paper in buildings are known fire hazards, and are so considered by fire departments. Yet can we assume that, if such an accumulation of paper in the Ceretti tavern had been shown here, without anything more, it would have furnished the foundation facts for the application of the *res ipsa loquitur* doctrine? The question answers itself."

Tedrow appraised the factual probabilities that are the implicit, although sometimes inarticulated, base for the application of *res ipsa loquitur* to particular factual situations as follows:

"Fires occur frequently, and often without negligence on the part of any one. The law rightly requires one who claims such negligence to prove it, by something which makes the theory reasonably probable. We find nothing here more than a possibility."

Plaintiff in this case, of course, argues that we should view the probabilities involved in a manner directly opposite to the view taken by the Kansas law and the view consistent with that of Kansas, as reflected by Tedrow's language, that "[f]ires occur frequently, and often without negligence on the part of any one." On page 14 of its suggestions, plaintiff argues that the probabilities that fires of unknown origin occur as a result of negligence are great enough for the law to eliminate the necessity of proving negligence. Specifically, plaintiff argues that:

"*In the ordinary course of things*, to use the language of the Scott [v. London & St. Katherine Docks Co.] case, fires do not start in commercial buildings in the middle of the night, if the buildings are managed with ordinary care, or else there wouldn't be much sense in constructing buildings in the first place. * * * The only connection that the plaintiff or its assured had with the fire was to store its goods in a warehouse adjacent to the building where the fire started. * * * The defendants, on the other hand, * * * know who was in the building, if anyone, at the time. They know what devices, machinery, electrical and gas connections, welding apparatus, blow-torches and tools, if any, were there. They know who had been working in the building and what type of work these people were doing prior to the fire. They know what was stored in the building. Upon the disclosure of their knowledge to the trier of the fact, it may be determined that the defendants were not negligent, but under the salutary rule of law known as *res ipsa loquitur*, plaintiff is entitled to its day in court even though it cannot at this stage inform the defendants precisely in what way they were negligent." [9]

█ As we have noted, the Kansas law, in full accord with the law of every other jurisdiction that has passed on the specific question, proceeds on the postulate that the experience of mankind is that fires may and do in fact have multiple causes, some of which involve negli-

---

9. In stating what plaintiff claims it does not know, namely, "who was in the building [or] what devices, machinery, electrical and gas connections, welding apparatus, blow torches and tools, if any," plaintiff made, in slightly different language, the argument made by plaintiff and rejected by the court in Starks Food Markets, supra. In that case, the Supreme Court of Kansas held that if

plaintiff was not in a position to prove "whether there was gas or electric motors being operated in the garage, whether its doors were open or closed, whether there was any fire to heat the garage, whether it was free from explosive fumes or vapors" (l. c. 1106 of 134 P.2d) that any finding of negligence as to the cause of the fire necessarily would rest upon conjecture.

gence and some of which do not; that the probabilities involved in a case involving a fire of unknown origin are not to be equated with the probabilities involved in a factual situation involving a barrel rolling out of a second story window; and that justice in cases involving factual situations such as that revealed by the stipulation filed in this case is better served by denying plaintiff the benefit of *res ipsa loquitur*. We shall follow the Kansas law as we have found it.

That determination, of course, does not mean that plaintiff is to be denied its day in court, as plaintiff suggests would be the result of our indicated ruling on the legal question presented by the pending motion for summary judgment. As we have already intimated, our determination that *res ipsa loquitur* is not applicable to the factual situation stipulated for purposes of the motion for summary judgment does not mean that plaintiff is to be precluded from attempting to show by either direct or circumstantial evidence that defendants were negligent.[10]

Of course, plaintiff may now know that it cannot prove any acts of specific negligence. If that be the case, and if plaintiff wants to perfect an appeal of this Court's determination of the legal question posed by the pending motion in favor of the defendants, procedures should be devised and followed that will permit the entry of a final appealable order.

If, on the other hand, plaintiff believes it has evidence of specific negligence, then the motion for summary judgment should only be partially sustained because we think it is obvious that any facts concerning alleged acts of specific negligence would be in dispute within the meaning of Rule 56 of the Rules of Civil Procedure.

We therefore refrain from issuing any order until a further pre-trial conference is held at which time the form of order will be determined.

---

10. As to the duty owed in regard to the spreading of fires of unknown origin, counsel should consult Centraal Stikstof

Accordingly, we direct (a) that this memorandum opinion be filed. What we have said here will be the law of the case. (b) That counsel arrange with the Court a convenient date within twenty (20) days for the holding of a further pre-trial conference; (c) that counsel for the respective parties file two (2) days before the pre-trial their written suggestions concerning the form of order and other proceedings that they believe should be taken in this case.

It is so ordered.

We thank counsel for both sides for their cooperation and for their excellent briefs.

Verkoopkantoor v. Pensacola Port Authority, N.D.Fla.1962, 205 F.Supp. 724, and similar cases.